UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRYAN BARTH, MILES WARREN )    No.:  10-cv-00305 (PAM/JJG)
and KAI STEENHOEK, individually, and )
on behalf of all others similarly situated, )
)
)
                    Plaintiffs, )
vs. )
)
BORDER FOODS, INC. and SKY )
VENTURES, LLC d/b/a PIZZA HUT, )
INC., )
)
                    Defendants. )
)

**DEFENDANT BORDER FOODS, INC.'S MEMORANDUM OF LAW**

**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    A.    The Parties. ............................................................................................ 2

    B.    Plaintiffs' Claims. ................................................................................. 3

    C.    Procedural Posture. .............................................................................. 4

UNDISPUTED FACTS ............................................................................................ 6

    A.    BFI is a Taco Bell Franchisee, Subject to Taco Bell Franchise
          Agreements, and it Does Not Deliver Its Food Products ............................ 6

    B.    Sky Ventures is a Pizza Hut Franchisee, Subject to Pizza Hut, Inc.
          Franchise Agreements ........................................................................... 7

    C.    BFI, Sky Ventures, and Three Other Entities Have Their
          Administrative Offices in a Golden Valley, Minnesota Office
          Complex. ............................................................................................... 8

    D.    The Fact That BFI and Sky Ventures and Others Share Certain
          Limited Resources Does Not Make BFI Plaintiffs' Employer. ................. 10

    E.    The Companies Do Not Share Operational Management. ......................... 12

ARGUMENT ......................................................................................................... 15

    I.    BFI IS ENTITLED TO SUMMARY JUDGMENT BECAUSE, AS
         A MATTER OF LAW, IT IS NOT PLAINTIFFS' EMPLOYER OR
         JOINT EMPLOYER UNDER THE FLSA. ................................................. 15

         A.    Standard of Review .......................................................................... 15

         B.    Statutory Background:  The FLSA. ................................................... 17

         C.    BFI is Not Plaintiffs' Employer Under the FLSA. ........................... 19

         D.    BFI is Not Plaintiffs' "Joint Employer" Under the FLSA ............... 22

E.     The Various Tests Established In Other Circuits Do Not
       Apply Where the Alleged Joint Employer Is Not An
       Employer At All; Nonetheless, They Would Support
       Summary Judgment In Favor Of BFI. ............................................. 27

CONCLUSION ........................................................................................................... 31

# TABLE OF AUTHORITIES

Page No.

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................. 15

*Armour Co. v. Wantock,*
323 U.S. 126 (1944) ...................................... 20, 21, 22, 24, 25, 27

*Bailey & Steenhoek et al. v. Border Foods, Inc. & Sky Ventures, LLC,*
No. 09-cv-1230 (RHK/AJB) (D. Minn) ....................................... 9

*Baystate Alt. Staffing, Inc. v. Herman,*
163 F.3d 668 (1st Cir.1998) ........................................... 27, 30

*Blair v. Wills,*
420 F.3d 823 (8th Cir. 2005) ......................... 20, 22, 24, 25, 27

*Bonnette v. Cal. Health & Welfare Agency,*
704 F.2d 1465 (9th Cir. 1983) ............................... 16, 27, 30

*Catani v. Chiodi,*
2001 WL 920025 (D. Minn. Aug. 13, 2001) ................. 16, 21, 27, 30

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................... 15, 16

*Chao v. A One Med. Servs., Inc.,*
346 F.3d 908 (9th Cir. 2003) ....................................... 18

*Chao v. Barbeque Ventures, LLC,*
2007 WL 5971772 (D. Neb. Dec. 12, 2007) ......................... 18

*Chao v. Diversified Transfer & Storage, Inc.,*
2008 WL 234262 (D. Mont. Jan. 25, 2008) ......................... 19

*Donavan v. DialAmerica Mktg., Inc.,*
757 F.2d 1376 (3d Cir. 1985) ....................................... 21

*Goldberg v. Whitaker House Coop.,* Inc.,
366 U.S. 28 (1961) ....................................... 16, 20, 22, 24

*Gorey v. Manheim Servs. Corp.*,
    788 F. Supp. 2d 200 (S.D.N.Y 2011)................................................................19

*Hartnagel v. Norman*,
    953 F.2d 394 (8th Cir. 1992) ....................................................................15

*Henson v. Pulaski Cnty. Sheriff Dep't*,
    6 F.3d 531 (1993)..............................................................................20, 24

*Jonah West et al. v. Border Foods, Inc. & Sky Ventures, LLC*,
    No. 05-cv-2525 (DWF/RLE) (D. Minn.).............................................9

*Kaplun v. Lipton*,
    2007 WL 707383 (S.D. Fla. Mar. 5, 2007)........................................18

*Karr v. Strong Detective Agency, Inc.*,
    787 F.2d 1205 (7th Cir. 1985) ...............................................................16

*Krenik v. Cnty. of Le Sueur*,
    47 F.3d 953 (8th Cir. 1995) ...................................................................15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................15

*McDonald v. JP Mktg., Assocs., LLC*,
    2007 WL 1114159 (D. Minn. Apr. 13, 2007)........................................30

*Morgan v. Speakeasy, LLC*,
    625 F. Supp. 2d 632 (N.D. Ill. 2007) ...................................................16

*Patel v. Wargo*,
    803 F.2d 632 (11th Cir. 1986) ..............................................................18

*Pierce v. Coleman Trucking, Inc.*,
    2005 WL 2338822 (N.D. Ohio Sept. 23, 2005).......................................18

*Reich v. ConAgra, Inc.*,
    987 F.2d 1357 (8th Cir. 1993) ...........................................................20, 24

*Reimer v. Champion Healthcare Corp.*,
    258 F.3d 720 (8th Cir. 2001) ..............................................................20, 24

*Ring v. Sears, Roebuck & Co.*,
    250 F. Supp. 2d 1130 (D. Minn. 2003) ...................................................15

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*,
    321 U.S. 590 (1944) .......................................................20, 22, 24, 25, 27

*Thompson v. Robinson, Inc.*,
    2007 WL 2714091 (M.D. Fla. Sept. 17, 2007) .........................................18

*Villareal v. El Chile, Inc.*,
    776 F. Supp. 2d 778 (N.D. Ill. 2011) .....................................................19

*Wabun-Inini v. Sessions*,
    900 F.2d 1234 (8th Cir. 1990) ..............................................................16

*Woellert v. Advanced Commc'n Design, Inc.*,
    2007 WL 2310063 (D. Minn. Aug. 7, 2007) ...............16, 21, 25, 26, 30

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003) ........................................................27, 28, 29

## **Rules and Statutes:**

Fed. R. Civ. P. 56(a) ....................................................................................15

29 U.S.C. § 203(d) ..................................................................................19, 24
29 U.S.C. § 203(e)(1) ...............................................................................19, 24
29 U.S.C. § 203(g) .............................................................................19, 22, 24
29 U.S.C. § 203(r)(1) .....................................................................................17
29 U.S.C. § 206(a) ....................................................................................17, 18
29 U.S.C. § 216 .........................................................................................17, 19

Pub. L. 718, 75th Cong., 3d sess. (52 Stat. 1060) .......................................17

29 C.F.R. § 776.0 .........................................................................................17
29 C.F.R. § 776.0a ........................................................................................17
29 C.F.R. § 779.19 ........................................................................................18
29 C.F.R. § 791(a) ........................................................................................25
29 C.F.R. § 791.2(a) .........................................................................23, 24, 31
29 C.F.R. § 791.2(b) .......................................21, 23, 24, 25, 26, 31
29 C.F.R. § 799.19 ...................................................................................19, 24

Minn. Stat. § 177.24 .....................................................................................17

Defendant Border Foods, Inc. ("BFI") respectfully submits this Memorandum of Law in Support of Its Motion for Summary Judgment.

## INTRODUCTION

The Named Plaintiffs, six Opt-in plaintiffs, and putative class and collective action plaintiffs (collectively, "Plaintiffs") in this case are current and former pizza delivery drivers.[1]   They bring identical federal and state employment law claims against both Border Foods, Inc. ("BFI") and Sky Ventures, LLC ("Sky Ventures").   For purposes of this Motion, it uncontested that Plaintiffs are or were employed by Sky Ventures.[2]   (Decl. of Fred Burmer ("Burmer Decl.") ¶ 15)   However, Plaintiffs are not and never were employees of BFI.   BFI is not in the pizza business, it is not in the pizza delivery business, it does not deliver the tacos and other food products it sells, and it has never employed any delivery drivers for any purpose.

This is not a typical case of an employer attempting to "game the system" by treating employees as if they work for two or more employers to avoid paying overtime. Nor is it the typical case of an employer using a labor contractor or employment agency as a ruse to avoid its obligations under federal and state employment laws.   Here, none of the Plaintiffs have ever provided any services for BFI's benefit, and BFI has never established or controlled any of the conditions of Plaintiffs' employment.   Nor does BFI own Sky Ventures or control its operations.   Plaintiffs are or were Sky Ventures'

---

[1]   In referring collectively to Plaintiffs for sake of convenience, BFI does not concede that collective or class action is appropriate in this case.

[2]   This is not to be construed as an admission that any particular unnamed putative collective or class plaintiff did, in fact, ever work for Sky Ventures.

employees; they are not BFI employees. Whether for perceived deeper pockets, or some other reason, Plaintiffs have chosen to sue an "extra" defendant—one with whom they have no relationship at all. That is not what the law permits. Accordingly, BFI respectfully moves for summary judgment on the grounds that it cannot be liable to Plaintiffs on any of their various employment law claims because it is not, and never has been, their employer.

## BACKGROUND

### A.    The Parties.

BFI is a Minnesota corporation with administrative offices in Golden Valley, Minnesota. (Decl. of Barry Zelickson ("Zelickson Decl.") ¶¶ 4, 6) BFI is a Taco Bell franchisee, and it owns and operates seventy-eight Taco Bell franchise restaurants in Minnesota and Wisconsin. (*Id.* ¶ 5) As a Taco Bell franchisee, BFI is subject to the specific terms and conditions of Taco Bell Corporation franchise agreements. (*Id.* ¶ 14; Decl. of Carol Williams ("Williams Decl.") ¶¶ 5-6) BFI's Taco Bell restaurants do not offer any delivery services or utilize any delivery drivers. (Williams Decl. ¶¶ 4, 7) BFI does not operate Pizza Hut franchise restaurants and it does not have any ownership interest in Sky Ventures. (Zelickson Decl. ¶¶ 5, 15)

Sky Ventures is a Delaware limited liability company with administrative offices in Golden Valley, Minnesota. Sky Ventures is a Pizza Hut franchisee and it owns and operates seventy-four Pizza Hut restaurants in Minnesota, Wisconsin, and Iowa. (*Id.* ¶¶ 7-9) As a Pizza Hut franchisee, Sky Ventures is subject to the specific terms and conditions of Pizza Hut, Inc. franchise agreements. (*Id.* ¶ 14; Burmer Decl. ¶¶ 5-6)

Most, but not all, of Sky Ventures' Pizza Hut restaurants offer delivery services to their customers. (Burmer Decl. ¶ 4)  Sky Ventures does not operate Taco Bell restaurants and does not have an ownership interest in BFI. (Zelickson Decl. ¶¶ 8, 15)

Plaintiffs consist of three Named, six Opt-in, and an unknown number of putative collective and/or class action plaintiffs who are current or former Sky Ventures' Pizza Hut pizza delivery drivers.[3] (Am. Compl. ¶¶ 22-35)  As previously noted, for purposes of this motion, Sky Ventures has not disputed that the Named and Opt-in Plaintiffs either are, or were at one time, its employees. (Burmer Decl. ¶ 15)

### B.    Plaintiffs' Claims.

Plaintiffs allege violations of the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. and the Minnesota Fair Labor Standards Act ("MFLSA"), Minnesota Statutes section 177.21, et seq.  (Am. Compl. ¶¶ 202-32)  Plaintiffs also allege violations of the gratuities provisions of the MFLSA, Minnesota Statutes section 177.24. (Am. Compl. ¶¶ 233-44)  The Amended Complaint contains four counts but advances two primary theories: First, Plaintiffs allege that in some instances, expenses they incurred operating their personal vehicles to deliver Sky Ventures' Pizza Hut franchise pizzas were greater than the reimbursements they received from Sky Ventures for those expenses.  They claim that this alleged deficiency brought their "net wage" below the federal and state statutory minimums. (Am. Compl. ¶¶ 80-89;

---

[3]    The Amended Complaint expressly limits the putative collective and Rule 23 classes to individuals who "worked as pizza delivery drivers for Defendant Sky Ventures, LLC." (Am. Compl. ¶ 39)  Because BFI does not employ or utilize delivery drivers, dismissing it from the suit will not prematurely foreclose any potential collective or Rule 23 class members' rights or claims.

89-108; 115-24)   Second, Plaintiffs allege that the delivery charge that Sky Ventures imposes on customers for each delivery should be deemed a gratuity that belongs to Plaintiffs. (Am. Compl. ¶¶ 134-40)

Because a past or present employer-employee relationship is an essential element of each of Plaintiffs' causes of action and BFI is not, and never has been, Plaintiffs' employer, BFI is entitled to summary judgment in its favor.

### C.   Procedural Posture.

The following chronology sets forth the principal events in the evolution of this action:

- May 26, 2009 -- Plaintiffs Kai Steenhoek and Corey Bailey initiate an action in this District captioned *Corey Bailey and Kai Steenhoek, individually and on behalf of all others similarly situated v. Border Foods, Inc. and Sky Ventures, LLC*, Civ. No. 09-cv-1230 (RHK/AJB) ("*Bailey*").   Steenhoek and Bailey purport to represent class and collective action plaintiffs consisting of current and former pizza delivery drivers, on the same claims and theories of relief currently pending before this Court.

- June 22, 2009 -- Steenhoek and Bailey file an Amended Complaint in *Bailey*.

- July 13, 2009 -- Defendants move to dismiss *Bailey* for failure to state a claim.

- August 17, 2009 -- Steenhoek and Bailey file their Second Amended Complaint.

- October 6, 2009 -- Judge Richard H. Kyle grants Defendants' motion to dismiss *Bailey*, dismissing the federal FLSA claim with prejudice.   Judge Kyle declines to exercise supplemental jurisdiction over the state law claims and dismisses the action.

- November 5, 2009 -- Steenhoek and Bailey file Notice of Appeal to the United States Court of Appeals for the Eighth Circuit.

- December 22, 2009 -- Steenhoek and Bailey dismiss their Appeal.

- February 2, 2010 -- Steenhoek and Plaintiffs Brian Barth and Miles Warren initiate the instant action, alleging the same four causes of action and theories of relief previously asserted in *Corey Bailey and Kai Steenhoek, individually and on behalf of all others similarly situated v. Border Foods, Inc. and Sky Ventures, LLC*, Civ. No. 09-cv-1230 (RHK/AJB).[4]

- February 23, 2010 -- Defendants move this Court to dismiss the instant action.

- May 5, 2010 -- Plaintiffs file and serve the First Amended Complaint in this action.

- May 17, 2010 -- Defendants move to dismiss the Amended Complaint.

- August 25, 2010 -- U.S. Magistrate Judge Jeanne Graham enters a stipulated Order staying the proceedings pending private mediation.

- May 16, 2011 -- The parties engage in mediation with R. Scott Davies.

- July 26, 2011 -- The parties further mediate with Mr. Davies. In connection with the mediation, the parties agree that a judicial determination of whether BFI is Plaintiffs' "joint employer" under the FLSA is a threshold issue to further settlement discussions. The parties stipulate to a stay of the litigation pending this Court's ruling on cross-motions for summary judgment on the joint employer issue.

- September 7, 2011 -- Magistrate Judge Graham issues an Order staying all aspects of the case except the question of BFI's status as an alleged joint employer under the FLSA. Magistrate Graham orders the parties to engage in discovery limited to that issue and to serve and file cross-motions for summary judgment on that issue on or before January 13, 2012.

In accordance with Magistrate Judge Graham's Order, the parties engaged in discovery on the joint employer issue between September 7 and November 30, 2011, and now bring cross-motions for summary judgment on that issue.

---

[4]     Because Judge Kyle dismissed Steenhoek's federal FLSA claim with prejudice, he joins only in the state law claims alleged in the action. (Am. Compl. ¶ 2 n.1)

## UNDISPUTED FACTS

**A.      BFI is a Taco Bell Franchisee, Subject to Taco Bell Franchise Agreements, and it Does Not Deliver Its Food Products.**

BFI was formed in 1996. (Zelickson Decl. ¶ 4)  It is owned in equal shares by brothers Lee and Jeff Engler.  (*Id.*)  As noted above, BFI owns and operates Taco Bell franchise restaurants.  (*Id.* ¶ 5)  While BFI's administrative offices are located in Golden Valley, Minnesota, its actual business operations occur in its seventy-eight Taco Bell restaurants located throughout Minnesota and Wisconsin.  (*Id.* ¶¶ 5-6)

BFI's Taco Bell restaurants offer dine-in, counter-purchase take-out, and drive-through take-out service.  (Williams Decl. ¶ 4)  Importantly, BFI's Taco Bell restaurants do not provide delivery service.  (*Id.*)  Taco Bell franchise restaurants specialize in Mexican foods.  (*Id.* ¶ 5)  Each Taco Bell restaurant is subject to a separate franchise agreement with Taco Bell Corporation.  (*Id.*)  The franchise agreements provide BFI with a limited license and rights to utilize Taco Bell's trademarks and system.  (*Id.* ¶ 6)  BFI must strictly comply with Taco Bell's system, procedures and operations manual.  (*Id.*)  Further, BFI is permitted to sell only the food items, beverages, and other products that are expressly described in Taco Bell's manual.  (*Id.*)  It is prohibited from selling food products not included in Taco Bell's franchise system.  Taco Bell's franchise agreements impose numerous other very specific conditions upon BFI, including training, facilities, facilities maintenance, advertising, franchise fees, record keeping, insurance, and related matters.  (*Id.*)  These requirements are unique to Taco Bell.  (*Id.*)

**B.    Sky Ventures is a Pizza Hut Franchisee, Subject to Pizza Hut, Inc. Franchise Agreements.**

Sky Ventures was formed in 2000.  (Zelickson Decl. ¶ 7)  Since at least 2004, all of its membership units are owned by BFI Ventures, LLC, which in turn, is owned in equal membership units by Lee and Jeff Engler.  (*Id.*)  As noted above, Sky Ventures is in the business of owning and operating Pizza Hut franchise restaurants.  (*Id.* ¶ 8)  Sky Ventures' administrative headquarters are also located in Golden Valley, Minnesota, but its actual operations take place within the approximately seventy-one restaurants located throughout Minnesota.[5]  (*Id.* ¶¶ 8-9)

Most Sky Ventures Pizza Hut restaurants offer dine-in, counter-purchase take-out, and delivery.  (Burmer Decl. ¶ 4)  As the name implies, Pizza Hut restaurants specialize in pizza, along with other quick service restaurant food items.  (*Id.* ¶ 5)  Each Pizza Hut restaurant is subject to a separate franchise agreement with Pizza Hut, Inc.  (*Id.*)  The franchise agreements provide Sky Ventures with a limited license and rights to utilize Pizza Hut's trademarks and system.  (*Id.* ¶ 6)  Sky Ventures must strictly comply with Pizza Hut's system, procedures and operations manual.  (*Id.*)  Further, Sky Ventures may sell only the food items, beverages, and other products that are expressly described in Pizza Hut's manual.  (*Id.*)  Sky Ventures is prohibited from selling foods products that are not included in Pizza Hut's franchise system.  Pizza Hut's franchise agreements impose numerous other very specific conditions upon Sky Ventures, including training, facilities, facilities maintenance, advertising, franchise fees, record keeping, insurance,

---

[5]    Sky Ventures also owns and operates a single Pizza Hut restaurant in Superior, Wisconsin, and two Pizza Hut restaurants in northern Iowa. (Zelickson Decl. ¶ 8)

and so forth. (*Id.*) There is no relationship or integration of any kind between Pizza Hut's franchising system and Taco Bell's franchising system—the franchises, trademarks, systems, food selections, and other requirements are entirely separate and distinct, as are BFI's and Sky Ventures' obligations to their respective franchisors. (*Id.* ¶ 7; Williams Decl. ¶ 6)

### C.   BFI, Sky Ventures, and Three Other Entities Have Their Administrative Offices in a Golden Valley, Minnesota Office Complex.

BFI's and Sky Ventures' administrative offices are located in Golden Valley, Minnesota, along with those of three other companies, Border Foods of Wyoming, LLC, 4KE, LLC, and 30by15, LLC.[6] (Zelickson Decl. ¶ 10) Over the years, this collection of five separate companies have adopted the generic trade reference "Border Foods Companies."[7] (*Id.* ¶ 17) However, each of the companies is properly and separately organized or incorporated in Minnesota or Delaware, each is properly and separately registered with the Minnesota Secretary of State, each has its own unique tax identification number, each has separate banking and credit facilities, each separately processes its own payroll (through an outside vendor), and each maintains its own

---

[6]   Border Foods of Wyoming, LLC owns and operates six Taco Bell franchise restaurants in the State of Wyoming, 4KE, LLC owns and operates three Au Bon Pain franchise restaurants in Minnesota, and 30by15, LLC owns and operates six Sonic drive-in franchise restaurants in Minnesota. (Zelickson Decl. ¶¶ 10-13) A sixth enterprise, Pizza Hut of Minnesota, LLC has been formed and is in the nascent stages of development. It will own and operate a different prototype of Pizza Hut franchise restaurants recently rolled out by Pizza Hut, Inc. It is not a party to this action.

[7]   Indeed, the sign outside the Golden Valley office reads, "Border Foods Companies." (Zelickson Decl. ¶ 17)

separate books and records.[8] (*Id.* ¶ 15) On the other hand, there is no actual "Border Foods Companies" entity organized or incorporated in any state, or registered with any state's Secretary of State. (*Id.* ¶ 17) "Border Foods Companies" does not have a tax identification number, maintain banking and credit facilities, or maintain corporate books and records—in short, it does not exist or do business in any actual corporate form. (*Id.*) It is merely a generic trade reference used as a convenient shorthand to refer simultaneously to five separate entities that are principally owned by Jeff and Lee Engler.[9] (*Id.*)

---

[8]      While the companies have, at various times, made loans to, and borrowed funds from, one another, all inter-company loans are properly accounted for on each company's books. (Zelickson Decl. ¶ 16) There is no comingling of assets between or among the companies. (*Id.*)

[9]      Indeed, it is believed that Plaintiffs' decision to name BFI is, more than anything, a remnant of a previous misunderstanding of the difference between the generic trade reference "Border Foods Companies" and the operating entity "Border Foods, Inc." Several years ago, Plaintiffs' counsel included BFI in a putative FLSA collective action brought by a Sky Ventures employee, based upon the mistaken belief that "Border Foods Companies" was the same as BFI. That matter was resolved and dismissed after Judge Frank denied conditional certification of the collective action, and before BFI could demonstrate that it was not a proper party. *See Jonah West et al. v. Border Foods, Inc. & Sky Ventures, LLC,* No. 05-cv-2525 (DWF/RLE) (D. Minn.). Plaintiffs' counsel has since brought two actions, each again naming Sky Ventures and BFI. As discussed in the chronology, above, Judge Kyle dismissed the first of those with prejudice, again before BFI could demonstrate that it was not a proper party. *See Bailey & Steenhoek et al. v. Border Foods, Inc. & Sky Ventures, LLC,* No. 09-cv-1230 (RHK/AJB) (D. Minn). In this, the third action, Plaintiffs again erroneously conflate "Border Foods Companies" with BFI. (*See* Am. Compl. ¶¶ 46-52 (discussing website advertising job opportunities with the various Border Foods Companies)) In this Motion, BFI will demonstrate that it is not, and never was, a proper party in any of these actions.

### D.   The Fact That BFI and Sky Ventures and Others Share Certain Limited Resources Does Not Make BFI Plaintiffs' Employer.

In order to take advantage of economies of scale, the five companies share certain resources. (*Id.* ¶ 18) For example, they share a single office complex for each of their individual administrative offices. (*Id.*) However, as noted above, the principal day-to-day business operations of each of the five companies occur in the various individual restaurants. (*Id.*) Each of the companies pays its proportionate share of the costs and expenses related to the Golden Valley office complex. (*Id.*) Likewise, various routine office supplies used in the corporate offices are purchased in bulk and charged pro rata to the various companies. (*Id.*) Likewise, some of the companies benefit from the combined purchasing power by purchasing soft drink supplies in bulk.

In some instances, the same individuals are officers or executives of each of the companies. (*Id.* ¶ 19) For example, Lee Engler is the CEO of BFI, and he is also, separately, the CEO of Sky Ventures and the other companies. (*Id.*) Likewise, Barry Zelickson is the Sr. VP of Administration of BFI, and he is also, separately, the Sr. VP of Administration of Sky Ventures. (*Id.*) As with the shared employees and shared resources, Mr. Engler's and Mr. Zelickson's wages and payroll expenses are allocated to each of the companies to which they provide services. (*Id.*) In order to avoid unnecessary duplication, these employees are "attached" to one or another of the companies for W-2 purposes, rather than receiving multiple W-2 statements from multiple employers. (*Id.*)

The five companies similarly share the cost of a small number of administrative employees, who, while receiving W-2 wages and a paycheck from one or another of the companies, also dedicate a portion of their time and efforts to one or more of the other companies. (*Id.* ¶ 20) These "shared" positions include certain human resources, accounting, and asset protection employees. (*Id.*) Each of the companies is charged for its share of the shared employees' wages, withholding, social security, and benefits, proportionate to the time each employee dedicated to that particular company. (*Id.*)

The companies have outsourced most of their accounting functions. (*Id.* ¶ 21) A single individual, the Director of Financial Operations, coordinates those efforts. (*Id.*) His time is allocated among the various companies. (*Id.*) Likewise, four to five human resources personnel provide support services to each of the companies, which, in turn, pay their pro rata portion for those services. (*Id.*) For example, recruiters assist the various companies with ad placement for, and interviewing of, manager-level employees but do not participate in interviews for hourly positions. (*Id.*)

Other services provided by shared Human Resources staff include the provision of various forms and employee handbooks, consistent with each companies' unique franchise requirements, and standard W-4 withholding election forms. (*Id.* ¶ 22) Shared human resources staff also provide general employment-related advice and support to managers within the various companies, on topics ranging from discipline and termination to performance reviews. (*Id.* ¶ 23) However, all actual decisions with respect to hiring, performance reviews, wage increases, discipline, and termination are

made exclusively by operational managers within the individual companies.[10]   (*Id.*

¶¶ 23-27)   Human resources professionals also assist in training management-level

employees, but hourly employees, including all Sky Ventures' delivery drivers, are

trained by Sky Ventures' Restaurant General Managers and Assistant Managers,

primarily with training tools provided by the franchisor, Pizza Hut.  (*Id.* ¶ 28)   Shared

human resources professionals do not participate in the training of hourly employees.

(*Id.*)

To the limited extent that the companies provide healthcare and related benefits

(primarily to management-level and certain administrative employees), they combine

employees for maximum buying power.  (*Id.* ¶ 29)   However, each company has its own

binder with the carrier.  (*Id.*)

### E.    The Companies Do Not Share Operational Management.

Because the franchise requirements for BFI's Taco Bell restaurants are so different

than the franchise requirements for Sky Ventures' Pizza Hut restaurants, each company

has its own VP of Operations, who exercises full day-to-day control and authority over

his or her respective organization.  (*Id.* ¶ 24-27)   Carol Williams is BFI's VP of

Operations, and she runs all operational aspects of BFI's Taco Bell restaurants.  (*Id.* ¶ 26;

Williams Decl. ¶ 1)   Ms. Williams is not involved with Sky Ventures or its Pizza Hut

restaurants, and works solely for BFI.  (Williams Decl. ¶ 2)   Fred Burmer is Sky

Ventures' VP of Operations, and he runs all operational aspects of Sky Ventures' Pizza

---

[10]    For example, in the case of Plaintiffs, Sky Ventures' Restaurant General Managers and Assistant Managers are responsible for hiring delivery drivers.  (Zelickson Decl. ¶¶ 23-25)

Hut restaurants. (Zelickson Decl. ¶ 27; Burmer Decl. ¶ 1) Mr. Burner is not involved

with BFI or its Taco Bell restaurants, and he works strictly for Sky Ventures. (Burmer

Decl. ¶ 2) Mr. Burmer receives his paycheck and W-2 from Sky Ventures, while Ms.

Williams receives hers from BFI. (*Id.*; Williams Decl. ¶ 2) Mr. Burmer has an office in

Sky Ventures' administrative office in Golden Valley but spends a significant portion of

his time out in Sky Ventures' restaurants. (Burmer Decl. ¶ 8) As Sky Ventures' VP of

Operations, Mr. Burmer exercises ultimate operational control over all Pizza Hut

operations and employees, including the delivery drivers. (*Id.* ¶ 1; Zelickson Decl.

¶¶ 23-25, 27)

Eight District Managers report to Mr. Burmer. (Burmer Decl. ¶ 9) Each District

Manager is responsible for approximately nine Sky Ventures' Pizza Hut restaurants. (*Id.*)

These District Managers also work solely for Sky Ventures, receive their paychecks and

W-2 statements from Sky Ventures, and they provide no services whatsoever to BFI.

(*Id.*) The District Managers travel between their respective restaurants and do not have

dedicated offices in Golden Valley. (*Id.*) Each Sky Ventures' Pizza Hut has a Restaurant

General Manager and, in most instances, an Assistant Manager. (*Id.* ¶¶ 10-11) The

Restaurant General Managers and Assistant Managers report to the District Managers,

who, in turn, report to Mr. Burmer. (*Id.*) The Restaurant General Managers and

Assistant Managers oversee a single Pizza Hut restaurant, and perform all of their duties

in that restaurant. (*Id.*) Like the District Manager, the Restaurant General Managers and

Assistant Managers do not work for or provide any services to BFI, and they also receive

their paycheck and W-2 from Sky Ventures. (*Id.*)

All pizza delivery drivers report to and are supervised by their Restaurant General Manager and Assistant Manager. (*Id.* ¶ 12) The delivery drivers each work at a particular restaurant, delivering Sky Ventures' Pizza Hut pizza and related food items. (*Id.*) They do not work for or provide any services for the benefit of BFI. (*Id.*) They are paid exclusively by Sky Ventures (paycheck and W-2), and Mr. Burmer, their individual District Manager, and their individual Restaurant General Manager establish and control the conditions of their employment. (*Id.*) During the term of their employment, delivery drivers' employment files are maintained at the restaurant location at which they work. (*Id.*) After a delivery driver leaves Sky Ventures' employment, his or her personnel file is eventually transferred to Sky Ventures' administrative offices in Golden Valley for long-term storage. (*Id.*)

To summarize, in all instances, Plaintiffs work or worked at Pizza Hut franchise restaurants owned and operated by Sky Ventures. They have never worked at or for any facilities that are owned or operated by BFI. They have provided no services, no work, and no benefit of any kind to BFI. Plaintiffs are or were paid W-2 wages by Sky Ventures, on a payroll system that is separate and unique to Sky Ventures. They were hired, trained, supervised, disciplined, and, if necessary, fired, by Sky Ventures' management employees. Additionally, BFI has no ownership interest in Sky Ventures, and likewise, Sky Ventures has no ownership interest in BFI. Each company maintains its own books, records, accounts, and credit facilities. BFI and Sky Ventures are each bound by separate ·and unique franchise agreements with separate and distinct franchisors. These franchise agreements control, in significant and unique ways,

numerous aspects of each business.  BFI and Sky Ventures are different companies with

different systems, selling different products, and Plaintiffs have worked for only one of

them—Sky Ventures.  BFI has no relationship with Plaintiffs and it simply does not

belong in this lawsuit.

## ARGUMENT

**I.      BFI IS ENTITLED TO SUMMARY JUDGMENT BECAUSE, AS A
         MATTER OF LAW, IT IS NOT PLAINTIFFS' EMPLOYER OR JOINT
         EMPLOYER UNDER THE FLSA.**

### A.      Standard of Review.

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A

fact is material only when its resolution affects the outcome of the case. *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is only genuine

if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.

1992) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986)).  Therefore, the nonmoving party may not rest on mere allegations or

denials, but must show through the presentation of admissible evidence that specific facts

exist creating a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Krenik v. Cnty. of

Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250

F. Supp. 2d 1130, 1138 (D. Minn. 2003).  Moreover, where a party bearing the burden of

proof on a particular claim cannot support each essential element of that claim, summary

judgment must be granted because a complete absence of proof regarding any essential

element renders all other facts immaterial. *See Celotex*, 477 U.S. at 322-23. Summary judgment is "an integral part of the Federal Rules as a whole, which are 'designed to secure the just, speedy and inexpensive determination of every action.'" *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (quoting *Celotex Corp.*, 477 U.S. at 327).

The question of whether Border Foods is a joint employer of Plaintiffs under the FLSA can be decided by this Court as a matter of law based on the undisputed facts of this case. *See, e.g., Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1985) (question of whether defendants are joint employers within the meaning of the FLSA is a question of law); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983) (same); *Morgan v. Speakeasy, LLC*, 625 F. Supp. 2d 632, 648 (N.D. Ill. 2007) (same); *see also Woellert v. Advanced Commc'n Design, Inc.*, 2007 WL 2310063, at *4 (D. Minn. Aug. 7, 2007) (finding as a matter of law that defendant was not plaintiff's joint employer); *and see Catani v. Chiodi*, 2001 WL 920025, at *6 (D. Minn. Aug. 13, 2001) ("Whether an entity is a 'joint employer' under the FLSA is a question of law.") (citing *Goldberg v. Whitaker House Coop., Inc.* 366 U.S. 28, 29 (1961)).

Here, there are no genuine issues of material fact in dispute and the Court can conclude as a matter of law that BFI is not and has never been Plaintiffs' employer under a joint employer theory or any other theory, and grant summary judgment in BFI's favor.

**B.     Statutory Background: The FLSA.**

The FLSA requires that employers pay a federally-mandated minimum wage to "covered" employees.[11] 29 U.S.C. §§ 206(a), 216. The Minnesota FLSA contains similar state-mandated requirements.  Minn. Stat. § 177.24.  Plaintiffs allege that Defendants failed to adequately reimburse them for expenses incurred using their vehicles delivering Pizza Hut pizzas and food items, causing their "net" wages to fall below the federal and state minimum wage. (Am. Compl. ¶¶ 202-32)  Plaintiffs also claim that the delivery charge Sky Ventures imposes on customers should be paid over to Plaintiffs as a gratuity. (Am. Compl. ¶¶ 233-44)

For purposes of this motion, it is undisputed that Sky Ventures employs or employed the three Named and six Opt-in Plaintiffs.  (Burmer Decl. ¶ 15)  Also, for purposes of this Motion, it is undisputed that Sky Ventures' delivery drivers are "covered" under the Act, because Sky Ventures is engaged in commerce and has annual

---

[11]     FLSA "coverage" is determined in either of two ways. As originally enacted, the Act applied only to employees who were themselves "engaged in commerce or in the production of goods for commerce." Pub. L. 718, 75th Cong., 3d sess. (52 Stat. 1060); *and see* 29 C.F.R. § 776.0a (describing original scope of FLSA). Coverage for individual employees engaged in commerce remains unchanged; however, the Act was subsequently extended to all non-exempt employees of "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a); 29 C.F.R. § 776.0. An "enterprise" is "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose. . . ." 29 U.S.C. § 203(r)(1). An "enterprise engaged in commerce" is defined as an enterprise that "has employees engaged in commerce . . ." or "whose annual gross volume of sales made or business done is not less than $500,000. . . ." Thus, in some instances, where an employee is not engaged in commerce and the direct employer has revenue of less than $500,000, she may still be covered under the Act if her employer is part of an "enterprise" that has combined revenue in excess of $500,000.

revenues in excess of $500,000.   (Burmer Decl. ¶ 16; *and see* n.8, *supra*)   In sum, Plaintiffs have an employer, and it is not BFI.

Plaintiffs appear to advance the theory that BFI and Sky Ventures collectively constitute an "enterprise" under the Act.   (Am. Compl. ¶¶ 58-68)   While BFI does not concede that it and Sky Ventures are an enterprise under the FLSA, that is not the relevant issue here.   Even if BFI and Sky Ventures were part of the same enterprise, that would only establish coverage—that is, that the FLSA applies to these delivery drivers— and that is not presently in dispute.   29 U.S.C. § 206(a).   Under the Act, "employer" and "enterprise" are not synonymous.   *See* 29 C.F.R. § 779.19.   "An employer may have an enterprise with more than one establishment, or he may have more than one enterprise, in which he employs employees within the meaning of the Act.   Also, there may be different employers who employ employees in a particular establishment or enterprise." *Id*.   And, it is well-settled that enterprise coverage is not the same as, and does not establish, joint employer liability.[12]   In other words, even if BFI and Sky Ventures were

---

[12]    *See, e.g., Patel v. Wargo*, 803 F.2d 632, 635-36 (11th Cir. 1986) (expressly holding that the two analyses "are and should be different" and "[t]he finding of an enterprise is relevant only to the issue of coverage); *see also Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003) (citing *Patel*, and holding that "Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under § 207 are technically separate issues."); *and see Pierce v. Coleman Trucking, Inc.*, 2005 WL 2338822, at *3 n.2 (N.D. Ohio Sept. 23, 2005) ("Plaintiffs tend to blur 'enterprise' and 'joint employers,' but these are distinct concepts."); *and see Kaplun v. Lipton*, 2007 WL 707383, at *2-3 (S.D. Fla. Mar. 5, 2007) ("a finding of enterprise coverage does not necessarily compel a finding of joint liability under the FLSA"); *see also Thompson v. Robinson, Inc.*, 2007 WL 2714091, at *4 (M.D. Fla. Sept. 17, 2007) ("Parties that are joint employers do not automatically constitute an enterprise for the purposes of the FLSA."); *and see Chao v. Barbeque Ventures, LLC*, 2007 WL 5971772, at *5-6 (D. Neb. Dec. 12, 2007) (single enterprise and joint employer

considered an enterprise, that would not establish that BFI is Plaintiffs' employer or joint employer—it would only establish that Plaintiffs are covered under the Act—a fact that, for purposes of this motion, is not in dispute.  (Burmer Decl. ¶¶ 16-17)

Based on the plain language of the FLSA and the regulations promulgated under it, liability cannot attach to BFI unless BFI *is or was* Plaintiffs' employer, either singly or jointly.  29 U.S.C. § 216 ("Any *employer* who violates the provisions of section 206 or section 207 of this title shall be liable. . . .") (emphasis added).  But BFI neither is nor was Plaintiffs' employer under any applicable definition in the FLSA, the regulations, or the cases construing the FLSA.  Therefore, BFI cannot be liable to Plaintiffs, it does not belong in this case, and it is entitled to summary judgment.

### C.    BFI is Not Plaintiffs' Employer Under the FLSA.

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  An "employer" is defined to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  To "employ" an employee means to "suffer or permit to work."  29 U.S.C. § 203(g); *and see* 29 C.F.R. § 799.19 ("Employ, as used in the Act, is defined in section 3(g) to include 'to suffer or permit to work.'").  An entity "suffers or permits" an

---

liability are "separate issues."); *and see Chao v. Diversified Transfer & Storage, Inc.*, 2008 WL 234262, at *4-5 (D. Mont. Jan. 25, 2008) (even where defendant conceded enterprise coverage, liability must be premised on whether the defendant actually employed the plaintiffs); *see also Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 793 (N.D. Ill. 2011) (holding that enterprise coverage is separate inquiry from joint employer liability); *and see Gorey v. Manheim Servs. Corp.*, 788 F. Supp. 2d 200, 210 (S.D.N.Y 2011) ("while § 203(s)(1) [enterprise coverage] can bring an entity under the coverage of the FLSA, it is not the proper method to impose joint liability.  Rather, courts in this Circuit apply the 'economic reality' theory of joint employment.").

individual to work if, as a matter of "economic reality," the entity functions as the individual's employer. *See Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). The U.S. Supreme Court has defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). In other words, employees "work" for an "employer" when it suffers or permits them to "contribut[e] their time, liberty and strength" primarily for the benefit of the employer. *Id.* at 603. The principal test for determining whether an activity constitutes "work" is "whether time is spent predominantly for the employer's benefit." *Armour Co. v. Wantock*, 323 U.S. 126, 133 (1944); *accord, Tenn. Coal*, 321 U.S. at 603; *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005); *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001); *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 533-34 (1993); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1361-62 (8th Cir. 1993).

To determine, as a matter of "economic reality" whether a worker is an "employee," courts consider the "totality of the circumstances," including: "(1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree or permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's

business." *Catani*, 2001 WL 920025, at *3 (citing *Donavan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376 (3d Cir. 1985)); *see also Woellert*, 2007 WL 2310063, at *3.

Applying the relevant factors from this "economic reality" or "totality of the circumstances" test to the facts of this case, it is clear that Plaintiffs have never been employees of BFI.[13]  BFI has never exercised any degree of control over the manner in which Plaintiffs perform their work, there is no working relationship between Plaintiffs and BFI whatsoever, and Plaintiffs' service—delivering pizzas—is not an integral part of BFI's business; in fact, it is not a part of BFI's business at all.  The economic reality, for Plaintiffs and BFI, is that there is no relationship between them in any sense of the word.

Where, as here, the workers in question were indisputably the employees of one company and allege they were "jointly" employed by another company, another way to view the inquiry is to simply ask whether the workers performed any work for the benefit of the alleged second employer.  *See* 29 C.F.R. § 791.2(b) (explaining that a joint employment relationship may exist when an "employee performs work which simultaneously benefits *two or more employers* or *works for two or more employers* during the workweek") (emphasis added); *Woellert*, 2007 WL 2310063, at *4 (finding that, as a matter of law, the defendant did not employ the plaintiff because she had performed no work for its benefit); *and see Armour*, 323 U.S. at 133 (holding that "work" is "time is spent predominantly for the employer's benefit").

---

[13]      Because this test is often used to distinguish between employees and independent contractors, some of the factors do not apply in the present context.  *See Donavan*, 757 F.2d at 1382 (applying test to determine that home workers were employees rather than independent contractors); *and see Catani*, 2001 WL 920025, at *3 (disregarding factors 2-4 as inapplicable to that case).

Here, Plaintiffs cannot even allege—much less present any evidence—that any of them ever provided any work or services that were even remotely for BFI's benefit. Plaintiffs deliver or delivered pizzas and other food products produced by Pizza Hut franchises that are owned and operated by Sky Ventures. There is not a single shred of evidence that any of the Plaintiffs ever did anything for BFI's benefit—much less *predominantly* for its benefit. *See Armour Co.*, 323 U.S. at 133. Nor is there any evidence, or even allegations, that BFI "suffered or permitted" Plaintiffs to work. 29 U.S.C. § 203(g); *Tenn. Coal*, 321 U.S. at 603. The "economic reality" in this case, is that BFI is not, and never has been, Plaintiffs' employer. *Goldberg*, 366 U.S. at 33; *Blair*, 420 F.3d at 829.

### D.     BFI is Not Plaintiffs' "Joint Employer" Under the FLSA.

For the reasons set forth above, BFI cannot be Plaintiffs' joint employer under the Act. Plaintiffs are attempting to create a theory of vicarious liability by twisting the statute and regulations beyond their express terms, purpose, and meaning. Plaintiffs would have the joint employer regulations "create" an employment relationship, and concomitant liability, where in reality, no such relationship ever actually existed. That is not how the statute and regulations work.

The regulations promulgated under the FLSA recognize circumstances where an employee may (actually) work for more than one employer; indeed, common sense suggests that this happens all the time:

> (a)  A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual

employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends on all the facts and circumstances of the case.

***

(b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employment; or

> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(a) & (b). But by their plain language, the joint employer provisions in the regulations do not apply here, because the essential prerequisite—that the Plaintiffs were at some point employed by both Sky Ventures and BFI—is entirely absent.

The regulation does not serve to create an employment relationship where none otherwise existed; rather, its purpose is to determine, where there actually are two or more employment relationships, whether those employers should be jointly responsible for combined compliance with the Act. 29 C.F.R. § 791.2(a) & (b). The reason for this is simple—if an individual works part-time for two unrelated entities, neither of them

should be required to account for the time the employee worked for the other employer, or to pay overtime on that basis. *See, e.g.,* 29 C.F.R. § 791.2(a) (if "two or more employers are acting entirely independently of each other . . . each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the act"). This makes perfect sense, because "[a]n employer should not be held responsible for an employee's actions in seeking, independently, additional part-time employment." 29 C.F.R. § 791.2(a), n.5. But on the other hand, where two or more (actual) employers are related, the regulations do not permit them to "separate" the employee's time in order to avoid the FLSA's overtime requirements. *See id.* But in either case, ***there must be two or more employers*** before the regulation has any application (29 C.F.R. § 791.2(a) & (b)), and that is simply not the case here.

Nothing in the joint employment regulation purports or attempts to determine who is or is not an employer; that is covered in the statute, in other regulations, and in the cases cited above. *See* 29 U.S.C. § 203(d); 29 U.S.C. § 203(e)(1); 29 U.S.C. § 203(g); 29 C.F.R. § 799.19; *Tenn. Coal*, 321 U.S. at 603; *Armour*, 323 U.S. at 133; *Goldberg*, 366 U.S. at 33; *Blair*, 420 F.3d at 829; *Reimer*, 258 F.3d at 725; *Henson*, 6 F.3d at 533-34; *Reich*, 987 F.2d at 1361-62. Instead, the joint employment regulation addresses the possibility that an individual might work for more than one employer at a time, and states that those employers may or may not be jointly responsible for aggregating that employee's time, depending on the facts and circumstances of the case. 29 C.F.R.· § 791(a).

In cases where there are two or more employers, the regulation describes how to determine whether they are also joint employers (i.e., jointly responsible for combining the employee's time and paying overtime).  29 C.F.R. § 791.2(b).  But critically, that section of the regulation expressly requires, as an initial matter, that the employee either "performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek."  29 C.F.R. § 791.2(b).  In other words, *before* considering whether two or more employers are joint employers, the regulation expressly requires that there must *be* two or more employers.  And under the statute, regulations, and case law, an employer is one who suffers or permits an employee to provide work or a service predominantly for its benefit.  *See Armour Co.*, 323 U.S. at 133; *Tenn. Coal*, 321 U.S. at 603; *Blair*, 420 F.3d at 829.  Here, Plaintiffs cannot make that threshold showing, because BFI has never been their employer, it has never suffered or permitted them to provide it any kind of benefit, and it has never controlled the conditions of their employment.   (Zelickson Decl. ¶ 33; Burmer Decl. ¶¶ 12, 14)  Plaintiffs cannot twist the statute and regulations to transform BFI into their employer when, in fact, it never was.

This Court has previously held that a defendant who never employed the plaintiff could not be liable as a joint employer.  In *Woellert*, cited above, the Court granted the defendant's motion for summary judgment under analogous facts.   *See Woellert*, 2007 WL 2310063.  There, the plaintiff worked as director of hospitality at an inn.  *See id.* at *1.  She sought to hold another company, Advanced Communications Design, Inc. ("ACD"), liable for the inn's alleged failure to pay her the minimum wage and overtime,

arguing that ACD was a "joint employer." *See id.* at *1-2.  The plaintiff's argument was based upon the fact that the companies had common ownership and a small number of ACD employees performed certain administrative functions for the inn, including providing human resources support, processing payroll, and providing personnel forms. *See id.* at *3.  She also argued that the inn and ADC were part of the same benefit plan. *See id.* at *2.  There were even some ACD forms in the plaintiff's personnel file. *See id.* However, none of the plaintiff's work at the inn was related to ACD or its products or services and ACD had no ownership interest in the inn. *See id.* at *1-2.  Citing 29 C.F.R. section 791.2(b), this Court found that, as a matter of law, ACD was not a joint employer where it did not employ the plaintiff in the first instance, because she had provided no services for the benefit of ACD and ACD had not supervised or controlled the conditions of her employment. *See id.* at *4.

The very same reasoning applies here.  While at some level, BFI and Sky Ventures have common ownership and a few BFI employees provide human resources support to Sky Ventures, Plaintiffs have never performed any work or provided any services for BFI's benefit. (Zelickson Decl. ¶¶ 21, 33; Burmer Decl. ¶ 12)  Likewise, BFI has never supervised or controlled any aspect of Sky Ventures' Pizza Hut delivery drivers' conditions of employment. (Zelickson Decl. ¶ 33; Burmer Decl. ¶ 14)  Where, as here, an individual provides no work for or benefit to an entity, and it exercises no control over the conditions of his or her employment, it is not that individual's employer. *See Armour Co.*, 323 U.S. at 133; *Tenn. Coal*, 321 U.S. at 603; *Blair*, 420 F.3d at 829.  Because BFI

is not Plaintiffs' employer, it cannot be their joint employer, and it cannot be liable to Plaintiffs under the FLSA.

E.   **The Various Tests Established In Other Circuits Do Not Apply Where the Alleged Joint Employer Is Not An Employer At All; Nonetheless, They Would Support Summary Judgment In Favor Of BFI.**

The joint employer issue typically arises where the employee works for an employment agency, a "temp" agency, or a labor contractor that provides contract labor to other entities for a fee. Indeed, all three of the cases from which the most widely-recognized joint employment tests derive involved just that circumstance. *See, e.g., Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003) (reversing district court holding that manufacturers were not joint employers with labor contractors who provided contract workers to the manufacturers); *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir.1998) (holding that temporary employment agency was a joint employer under the Act); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (holding that counties were joint employers of in-home care givers who provided services to public program recipients); *see also Catani*, 2001 WL 920025, at *7 (applying the *Bonnette* test and holding that temporary staffing agency and its owner were not joint employers with the taconite producer to which it provided workers). Understandably, it may be unclear whether an employment agency, which hires and pays the workers, or the entity to which the workers provide their services, or both, constitute the "employer" for FLSA purposes.

Here, however, that is not the relationship between Plaintiffs and BFI. Indeed, there is no relationship between Plaintiffs and BFI at all. Therefore, some aspects of the

these widely-recognized joint employer tests do not fit here.  Nonetheless, a review of the

leading tests is instructive, as it demonstrates that there is no conceivable basis for joint

employment liability here.

Two principal tests have been advanced in the other circuits.  First, the Second

Circuit has applied a six-factor test considering:

(1)      whether the plaintiff used the entity's premises for his work;

(2)      whether the labor contractor had a business that could or did shift as a unit from one putative joint employer to another;

(3)      the extent to which the plaintiff performed a discrete line-job that was integral to the entity's process of production;

(4)      whether responsibility under the labor contract could pass from one subcontractor;

(5)      the degree to which the entity or its agents supervised the plaintiff's work; and

(6)      whether the plaintiff worked exclusively or predominantly for the entity.

*Zheng*, 355 F.3d at 72.  This test reflects the "employment contractor" or agency

elements that were present in that case.  There, garment manufacturers hired contractors,

who, in turn, provided "finishers" to perform stitching work for the manufacturer.  *See*

*id*. at 64.  Indeed, each of the six factors in this test is particularly relevant to the inquiry

where, as there, the workers were clearly "employed" by the labor contractor, but

provided services to the manufacturer, on its premises, and under its direct supervision.

*See id*.

Some of these factors seem less directly relevant where, as here, it is not alleged

that Sky Ventures retained and provided pizza delivery drivers used by BFI.

Nonetheless, reviewing the Second Circuit's factors, it is clear that none would support a finding of a joint employment relationship. For example, Plaintiffs did not use BFI's facilities for work. *Zheng*, 355 F.3d at 72. The second factor does not apply, since it is not alleged that Sky Ventures is a labor contractor. *See id.* Under the third factor, Plaintiffs did not perform a discrete line-job that was integral to BFI. *See id.* On the contrary, BFI does not deliver its food products. Again, the fourth factor does not apply, because BFI did not hire contractors or subcontractors to provide it with delivery drivers. *See id.* Under the fifth factor, BFI did not supervise Plaintiffs' work in any manner or to any degree. *See id.* Rather, in all instances, Sky Ventures' delivery drivers were supervised by Sky Ventures' Restaurant General Managers and Assistant Managers who had no relationship with BFI whatsoever. (Burmer Decl. ¶ 14) The final factor also favors BFI, as Plaintiffs did not work exclusively or predominantly for BFI. *Zheng*, 355 F.3d at 72. Indeed, as discussed at length above, Plaintiffs did not work for BFI at all. Plaintiffs performed no services that benefitted BFI in any way. (Williams Decl. ¶ 7) Accordingly, none of the Second Circuit factors would support a finding that BFI is Plaintiffs' joint employer.

Second, the First and Ninth Circuits have applied a four-factor joint employer test that considers whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of

employment; (3) determined the rate and method of payment; and (4) maintained employment records.[14] *See Baystate*, 163 F.3d at 675; *Bonnette*, 704 F.2d at 1470.

Like the Second Circuit's six-factor test, this test was established in circumstances where the workers were paid by one entity but provided services to another, and to that extent, it is inapposite here. *See Baystate*, 163 F.3d at 671; *Bonnette*, 704 F.2d at 1467-68. Further, as noted above, these tests were not developed to determine *whether* an entity was an employer, but rather, whether two entities that each clearly had a relationship with the workers were joint employers. Here, BFI had *no relationship* with Plaintiffs.

Nonetheless, applying the First and Ninth Circuit test to the facts of this case further demonstrates that BFI could not be Plaintiffs' employer, jointly or otherwise. BFI did not have the power to hire or fire Plaintiffs—only Sky Ventures exercised that authority. (Burmer Decl. ¶ 14) BFI did not supervise or control Plaintiffs' work schedules or conditions of employment—again, only Sky Ventures exercised that authority. (*Id.*) BFI did not determine the rate or method of Plaintiffs' pay; that, too, was solely up to Sky Ventures. (*Id.*) Finally, BFI did not maintain Plaintiffs' employment records. (*Id.* ¶ 13) Therefore, none of the First/Ninth Circuit factors would support a finding of joint employment liability.

---

[14]    Notably, courts in this District, including this Court, have cited and applied the four-factor *Bonnette* test. *See McDonald v. JP Mktg., Assocs., LLC*, 2007 WL 1114159, at *4-5 (D. Minn. Apr. 13, 2007); *Woellert*, 2007 WL 2310063, at *4; *Catani*, 2001 WL 920025, at *5-6.

The leading tests for determining whether a joint employment relationship exists do not properly apply for two reasons.  First, the purpose of the joint employment regulation is to determine when two or more *actual* employers should be jointly responsible for aggregating a shared employee's time for FLSA purposes—not to determine whether an entity with absolutely no relationship to an individual *is* his or her employer.  29 C.F.R. 791.2(a) & (b).  Here, there is no evidence that BFI employed Plaintiffs in the first instance.  Second, many of the elements of the leading tests focus on relationships between the worker, an employment agency or labor contractor, and an entity to which the worker provides his or her services.  That is simply not what is alleged here.  Nonetheless, a careful review of the factors courts in this District and in other circuits have historically considered shows that *none* of those factors supports a finding that BFI is Plaintiffs' employer or joint employer.  Rather, they demonstrate conclusively that BFI is not Plaintiffs' employer or joint employer.

## CONCLUSION

BFI does not belong in this case.  All of Plaintiffs' causes of action require, among other things, a past or present employment relationship between the plaintiff and the defendant.  Applying any applicable definition under the FLSA, the regulations interpreting the FLSA, or the cases enforcing the FLSA, BFI is not Plaintiffs' employer. The joint employer provisions of the regulations do not change that fact.  Those regulations do not serve to create employment relationships where they did not otherwise exist; they merely determine whether two already existing employers are required to aggregate an employee's time and share responsibility for overtime under the FLSA.

That is not the case here. BFI and Sky Ventures are not skirting their obligations under the FLSA and MFLSA by "pretending" that Plaintiffs work for two separate companies and then failing to aggregate their hours. Nor is either a labor contractor providing workers to the other. Rather, Plaintiffs are attempting to impose vicarious liability on BFI, an entity to which they have never provided any services and which has never controlled any of the conditions of their employment.

Because there has never been any relationship, much less an employment relationship, between BFI and Plaintiffs, there is no possible basis for liability. Accordingly, BFI is entitled to summary judgment and dismissal from this action.

Dated: January 13, 2012                      WINTHROP & WEINSTINE, P.A.


                                             s/William A. McNab
                                                Laura A. Pfeiffer, #260125
                                                William A. McNab, #320924
                                                Joseph M. Windler, #387758

                                                Suite 3500
                                                225 South Sixth Street
                                                Minneapolis, Minnesota 55402
                                                Tel:  (612) 604-6400
                                                Fax:  (612) 604-6800
                                                lpfeiffer@winthrop.com
                                                wmcnab@winthrop.com
                                                jwindler@winthrop.com

                                             *Attorneys for Border Foods, Inc. and Sky
                                             Ventures, LLC*

6380067v2